UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:25-cv-00358

**Receiver Ferdose al-Taie,**
*Plaintiff,*
v.
**Matregenix, Inc., et al.,**
*Defendants.*

# OPINION AND ORDER

In a separate civil-enforcement action, the court placed two entities accused of securities fraud into receivership. In this action, the receiver asserts that those entities have claims against the defendants here for acts defendants allegedly performed while participating in the receivership entities' securities fraud. Now before the court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 45. For the following reasons, that motion is granted in part and denied in part.

## I. Background

The Securities and Exchange Commission (SEC) brought a civil-enforcement action for securities fraud against Reliable One Resources, Inc. (Reliable One); Quantum Filtration, Inc.; and two of Reliable One's officers. *SEC v. Reliable One Resources, Inc.*, No. 6:23-cv-00006 (E.D. Tex. Jan. 6, 2023) [hereinafter *Reliable One*], Doc. 2. On the SEC's motion, the court froze those defendants' assets and created a temporary receivership. *Id.*, Doc. 9 at 7–9. The court later extended the asset freeze and expanded the receivership. *Id.*, Doc. 37 at 1; Doc. 78; Doc. 99.[1]

The receiver obtained documents related to the *Reliable One* defendants' financial transactions and hired forensic accountants to help review those documents. *See id.*, Doc. 67 at 3–4; Doc. 94

[1] The court will refer to the order extending the receivership (*Reliable One*, No. 6:23-cv-00006, Doc. 37) as the receivership order.

at 5. In a draft report provided in August 2024, the accountants indicated that Matregenix, Inc.—one of the defendants in this action—"had received significant transfers of investor funds" from its "sale of medical equipment to [the *Reliable One*] [d]efendants." Doc. 39 at 26; *Reliable One*, No. 6:23-cv-00006, Doc. 94 at 7. Accordingly, the receiver subpoenaed Matregenix for documents about Reliable One's dealings with Matregenix and related parties. *Reliable One*, No. 6:23-cv-00006, Doc. 94 at 7.

A year later, the receiver brought this lawsuit against Matregenix and its CEO, Sherif Soliman. Doc. 1. The operative complaint alleges the following:

- Soliman, a vice president of Reliable One and research director for Quantum Filtration, founded Matregenix and became its CEO and principal shareholder. Doc. 39 at 2. Reliable One then hired Matregenix as a consultant. *Id.* at 3.
- Soliman knew that Reliable One was funded by investors relying on false or misleading representations. *Id.* at 3. Yet he accepted investor funds from Reliable One to finance Matregenix's operations. *Id.*
- Soliman promised Reliable One that, with Reliable One's proprietary information, he could help develop and market nanofiber membranes for water filtration and face masks. *Id.* He also promised he could help develop other products such as hand sanitizer. *Id.* at 4.
- Reliable One's ensuing relationship with Matregenix was governed by express and implied agreements, which Matregenix violated by failing to develop viable products for Reliable One and by misusing Reliable One's resources for the benefit of other parties. *Id.* at 4–6, 15–21.
- Matregenix helped Reliable One develop marketing materials that were false and obtained more funding from Reliable One through additional false promises. *Id.* at 4–7.

The parties mediated but failed to reach a settlement. Doc. 41. Defendants now move to dismiss the operative complaint. Doc. 45. The court held a hearing on June 1, 2026, and ordered supplemental briefing, which the parties filed. Doc. 56; Doc. 58; Doc. 61; Doc. 62.

## II. Legal standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts well-pleaded allegations as true and construes those allegations in the light most favorable to the plaintiff. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). But the court "will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (cleaned up).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Ordinarily, if the court considers matters outside the pleading, a motion to dismiss should be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). That said, when resolving a motion to dismiss, the court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court may take judicial notice of public records, *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019), such as filings in a prior lawsuit. *See Krystal One Acquisitions, L.L.C. v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020) (per curiam) (unpublished). The court may also consider documents attached to a motion to dismiss that

are referenced in the complaint and are "central to the plaintiff's claims." *Walker*, 938 F.3d at 735.

## III. Discussion

As to all claims, defendants argue that the affirmative defense of *in pari delicto* applies and bars recovery. Although the court does not rule out that the defense may apply after factual development, the court does not read the complaint as establishing the defense of *in pari delicto* on its face. The court then grants defendants' motion to dismiss as to four causes of action for failing to state a claim on which relief can be granted, dismisses a fifth claim as abandoned, and denies the motion to dismiss as to the remaining claims.

### A. In pari delicto

The court begins with the doctrine of *in pari delicto*, a Latin phrase meaning "in equal fault." Based on a policy that courts should not become involved in dispute resolution between fellow wrongdoers, the doctrine bars recovery for losses bound up with the claimant's own prohibited conduct. *See Banc One Cap. Partners Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995) (citation omitted); *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354–55 (3d Cir. 2001); *Erickson v. Times Herald Printing Co.*, 271 S.W.2d 329, 332 (Tex. Civ. App. 1954). Defendants contend that this doctrine bars all of the claims here because Reliable One was more closely involved with and more at fault for the underlying securities-fraud scheme than defendants. *See* Doc. 54 at 4–6.

The receiver first argues that defendants waived that defense by failing to raise it in their motion to dismiss, as opposed to supplemental briefing on that motion to dismiss. Doc. 53 at 5–6. The court disagrees. As "an equitable, affirmative defense," *in pari delicto* must be raised when "responding to a pleading." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012) (per curiam); Fed. R. Civ. P. 8(c)(1). But defendants have not yet answered the amended complaint; they move to dismiss it. *See United Transp. Union v. Fla. E. Coast R.R. Co.*, 586 F.2d 520, 527

(5th Cir. 1978) (explaining that an affirmative defense is "most properly raised in an answer" but "can be raised by motion to dismiss" if the complaint supports the defense). Defendants have not waived this defense under Rule 8. And their supplemental briefing at the court's invitation may of course be considered.

Next, the receiver argues that the misconduct of Reliable One's former principals cannot be imputed to Reliable One, whose claims the receiver is asserting. Doc. 53 at 2–3. The receiver attempts to analogize the fact pattern here to that in *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185 (5th Cir. 2013), and two other Fifth Circuit decisions. Doc. 53 at 2–3. Defendants, however, distinguish those as cases concerning an officer pillaging an entity by transferring its funds wrongfully. Doc. 54 at 4–6. Accordingly, defendants urge that *in pari delicto* may apply when an equity receiver brings claims other than for fraudulent transfer. *Id.*

The receiver's argument is unavailing, but for a different reason. In *Janvey*, a receiver brought a fraudulent-transfer suit: one depending on the wrongfulness of an officer's transfer of funds out of a company controlled by the officer, not on an external defendant's alleged fraud on that company. 712 F.3d at 188–89. Relying on reasoning from a similar Seventh Circuit decision, the Fifth Circuit declined to apply *in pari delicto*. *Id.* at 190–91 (citing *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995)). When an officer fraudulently conveys funds away from a corporation that he controls, the corporation is a mere "robotic tool[]" and "victim[]." *Scholes*, 56 F.3d at 754. So the knowledge and effects of the officer's fraudulent conveyances of funds "are not imputed to his captive corporations." *Janvey*, 712 F.3d at 190; *see also Janvey v. Alguire*, 847 F.3d 231, 241 (5th Cir. 2017). Once freed from the wrongdoer's control, the corporations become entitled to the return of funds. *Janvey*, 712 F.3d at 190–91.

*Janvey* turned on attribution: whether a corporate officer's wrongdoing—namely, the wrongful transfer of corporate assets—could be attributed to the corporation itself. The Fifth Circuit has

repeatedly answered "no." The distinction between an innocent corporation and a wrongdoing officer means that a receiver may "maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so." *Jones*, 666 F.3d at 966 (citation omitted).

Here, in contrast, attribution is not at issue. This is not a case of a corporation pursuing assets taken from it by a now-ousted officer whose interests diverged from the corporation's. Rather, the SEC made a convincing showing that the corporation itself benefitted by fraudulently gaining funds from investors. Reliable One was not merely a robotic tool in an officer's pursuit of his separate interests. Per the SEC's allegations, which persuaded the court to create a receivership in the first place, Reliable One played a direct role; indeed, the SEC named Reliable One as a defendant in the securities-fraud action. *See* No. 6:23-cv-00006, Doc. 2.[2] So no question of attribution exists here.

Although the receiver's cited cases do not preclude the *in pari delicto* defense as a matter of law, factual questions remain about its applicability. For the defense to apply, the plaintiff must be at least equally responsible for the wrongdoing that underlies the plaintiff's suit. *Banc One*, 67 F.3d at 1197. The receiver alleges that the *Matregenix* defendants acted within the context of, and took advantage of, *Reliable One's* securities-fraud scheme. *See, e.g.*, Doc. 39 at 2, 31–32. So the requisite fault may well prove to be present. But crediting an affirmative defense in a Rule 12(b)(6) posture requires it to appear on the face of the complaint. And the complaint does not so extensively discuss the assignment of fault as to make it necessarily true that defendants' allegedly wrongful acts caused harm substantially predicated on Reliable One itself committing securities fraud.

It is certainly possible that, in a culture of fraud and impunity, one fraudster can inspire another to get in on the action by creating further inflated claims and misrepresentations. But the face of

[2] The court takes judicial notice of the filings in *Reliable One*, No. 6:23-cv-00006. *See Walker*, 938 F.3d at 735; *Krystal One*, 805 F. App'x at 287.

the complaint leaves it unclear whether some of defendants' alleged wrongdoing might have occurred without Reliable One's own scheme that gave rise to the appointment of a receiver in the first place. Factual development is thus appropriate before a fact-finder makes that determination.

By the same token, the court does not rule out that the defense may ultimately apply. The receiver does allege that defendants here participated in and took advantage of the *Reliable One* securities-fraud scheme. Doc. 39 at 2, 24. The receiver further alleges that Reliable One's officers were unable to bring claims against defendants because doing so would expose their own fraud. Doc. 39 at 24–25. So discovery could well reveal that Reliable One was at least equally at fault for the harms the receiver seeks to remedy. Or, in a species of the broad idea of *in pari delicto* as applied in the fraud context, the evidence could show that Reliable One's own securities fraud and knowledge of Matregenix's awareness of the scheme means that it cannot have reasonably relied on the truth of the alleged representations here. *See R.F. Lafferty*, 267 F.3d at 355 (quoting *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453–54 (7th Cir. 1982)).

The court holds today only that the complaint does not facially establish that the receivership entities are *in pari delicto* with defendants. The court will continue to attend to invocation of that defense as it considers future motions.

**B. Statutes of limitations**

Next, defendants contend that the receiver's claims are time-barred under applicable statutes of limitations. Doc. 45 at 17–18. As the party invoking that defense, defendants bear the burden of proving when the receiver's cause of action accrued. *In re Hinsley*, 201 F.3d 638, 644–45 (5th Cir. 2000) (citation omitted). Defendants fail to carry that burden.

First, defendants suggest that the receiver's tort and contract claims accrued sometime between 2019 and February 2021. Doc. 45 at 18; Doc. 47 at 4–5. Defendants also argue that the securities-fraud claims accrued in January 2023. Doc. 45 at 21–22. But the

receivership order, which the court entered on February 8, 2023, states that "as to a cause of action accrued or accruing in favor of one or more of the receivership defendants against a third person or party, any applicable statute of limitations is tolled during the period in which" the order remains in effect. *Reliable One*, No. 6:23-cv-00006, Doc. 37 at 16. That order thus tolled the limitations periods for the receiver's securities-fraud claims. And considering when the court entered the receivership order, defendants' broad timeframe is not enough to prove that the limitations period for the receiver's tort and contract claims expired before that date. Showing that claims could be time-barred is not the same as proving that they are time-barred.

For instance, to show that the tort claims subject to two-year limitations periods are time-barred, defendants must prove that the claims accrued two years before February 8, 2023. *See* Doc. 45 at 18; *In re Hinsley*, 201 F.3d at 645. Defendants' general timeframe, which ends sometime in February 2021, does not foreclose the possibility that those claims accrued less than two years before the court entered the receivership order. And it certainly does not preclude the timeliness of other claims which defendants state are subject to longer statutes of limitations. *See* Doc. 45 at 17–18.

Defendants do not directly address the receivership order's tolling effect. *See* Doc. 45 at 17–18, 21–22; Doc. 47 at 4–5. Rather, defendants challenge the receivership order's tolling effect under the receiver's discovery-rule argument. Doc. 47 at 4. If claims did not accrue until the receiver received the draft forensic report in August 2024, defendants contend, the receivership order did not toll any limitations periods because it only tolled "accrued or accruing" causes of action. Doc. 47 at 4–5. Even accepting that argument, August 2024 is only a year and a month before September 2025, when the receiver brought this action. *See* Doc. 1. It is also less than two years before the receiver brought her securities-fraud claims in her amended complaint. *See* Doc. 39. Thus, even

claims subject to a two-year limitations period are not time-barred under defendants' argument.

Defendants have not carried their burden of establishing that any claim is time-barred. Because defendants have not proven that any claims would be time-barred without the application of the discovery rule or adverse-domination doctrine (*see* Doc. 46 at 7), the court addresses neither.

**C. Securities fraud**

Turning to the receiver's causes of action, the court begins with the receiver's securities-fraud claims. The receiver first raises a claim for securities fraud under § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. Doc. 39 at 30–33 (citing 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5). Two elements of a securities-fraud claim under § 10(b) and Rule 10b-5 are that "the plaintiff relied on the [defendant's] misrepresentation or omission in purchasing or selling [a] security" and that the misrepresentation or omission "proximately caused" the plaintiff's economic loss. *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 649 (S.D. Tex. 2021) (citation omitted); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

The receiver alleges neither. First, she does not allege that any receivership entity relied on any misrepresentation or omission when buying or selling a security. Rather, her allegations focus on investors' reliance when investing in Reliable One. *See* Doc. 39 at 31–35. But a "receiver has standing to assert only the claims of the entities in receivership . . . not the claims of the entities' investors-creditors." *Janvey*, 712 F.3d at 190. Accordingly, the receiver's emphasis on investors' reliance is misplaced. Second, the receiver does not plead that any receivership entity suffered economic loss from buying or selling securities due to its reliance on a misrepresentation or omission. Because the receiver thus fails to state a claim for securities fraud under federal law, those claims are dismissed.

The receiver also brings a claim for securities fraud under the Texas Securities Act. Doc. 39 at 33–35. Defendants urge that this claim succeeds or fails for the same reasons as plaintiff's federal securities-fraud claim. Doc. 45 at 23–24. The receiver failed to respond to defendant's argument. "[A] party abandons a claim by failing to defend it in response to a motion[] to dismiss . . . ." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Thus, the receiver's state-law securities claim is also dismissed.

**D. Misappropriation of trade secrets**

The court next addresses the receiver's trade-secrets claim under the Texas Uniform Trade Secrets Act (TUTSA) and the Defend Trade Secrets Act (DTSA). Defendants argue that the receiver failed to sufficiently identify any trade secret. Doc. 45 at 34. The receiver points to water-desalination products and other goods as trade secrets. Doc. 46 at 32 (citing Doc. 39 at 9–11).

"Because the elements and definitions applicable to the DTSA and TUTSA are near identical, courts have addressed [claims under both statutes] together." *El Paso Disposal, LP v. Ecube Labs Co.* 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025) (cleaned up). The first element of trade-secret misappropriation is that a trade secret existed. *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994). "[B]usiness information is not necessarily a trade secret simply because it is confidential." *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 664 (E.D. Tex. 2024) (collecting cases). Rather, "[a] trade secret is any formula, pattern, device or compilation of information used in one's business . . . which gives an opportunity to obtain an advantage over competitors who do not know or use it." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 583 (5th Cir. 2013) (cleaned up). Put another way, the claimed trade secret must have "independent economic value." 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6); *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). A trade secret therefore "differs from other secret information in a business in that it is not simply

information as to single or ephemeral events in the conduct of the business. A trade secret is a process or device for continuous use in the operation of the business." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 274 (5th Cir. 2009) (cleaned up).

The receiver's argument and misappropriation claims rest on paragraph 32 of her amended complaint. Doc. 46 at 32 (citing Doc. 39 at 9–11). That paragraph states that "Reliable One hired Soliman to lead the research and development of innovative and proprietary products and technologies . . . ." Doc. 39 at 9. It then proceeds to state that such research and development included:

(1) "creating and developing new water desalination products";

(2) "creating and developing novel nanofibrous membranes that can be used in or with those . . . products";

(3) "creating and developing proprietary manufacturing methods and techniques . . . with particular emphasis on establishing a proprietary balance of cost savings, manufacturing efficiencies, product quality and filtration effectiveness that would likely be acceptable in the marketplace and to consumers"; and

(4) "creating and developing new face mask products . . . in light of COVID-19 considerations."

*Id.* at 9–10. The complaint describes each of these research and development items as "Reliable One's Proprietary Information." *Id.* at 11.

The alleged trade secrets are, "at best, a statement of [Reliable One's] goal[s] . . . and general concepts about how to accomplish th[ose] goal[s]." *Astro Tech., Inc. v. Alliant Techsystems, Inc.*, No. 4:03-cv-00745, 2005 WL 6061803, at *15 (S.D. Tex. Sep. 2005). The receiver attempts to argue that she has alleged more than mere goals. But when describing the technologies and manufacturing methods that purportedly constitute trade secrets, the receiver's brief omits that each was something defendants allegedly agreed to "creat[e] and develop[]." Doc. 39 at 9–10; Doc. 46 at 32.

Moreover, the complaint also alleges that "Matregenix delivered nothing but repeated failures." Doc. 39 at 21. Put simply, the receiver pleaded not trade secrets but defendants' failure to develop trade secrets.

"Such undeveloped ideas or plans do not rise to the level of a trade secret." *Astro Tech.*, 2005 WL 6061803, at *15; *see also TNS Media Rsch., LLC v. Tivo Rsch. & Analytics, Inc.*, 629 F. App'x 916, 931, 933 (Fed. Cir. 2015) (unpublished) (explaining that "business goals" and "new product ideas" are not trade secrets under New York's analogous definition of a trade secret). An aspiration to create "a process or device for continuous use in the operation of the business" is not that process or device. *Cf. CQ, Inc.*, 565 F.3d at 274 (citation omitted). That is especially true here considering that the receiver alleges that defendants "delivered nothing but repeated failures." Doc. 39 at 21. At bottom, the receiver's allegations do not identify any "formula, pattern, device or compilation of information." *Daniels Health Scis.*, 710 F.3d at 583. The receiver's allegations only identify agreements to "creat[e] and develop[]" such things—and defendants' failure to do so. Doc. 39 at 9–11, 21.

Mere agreements or goals do not qualify as trade secrets. Accordingly, the receiver has failed to state a claim for trade-secret misappropriation under the TUTSA and DTSA. Because the court finds that the receiver has failed to plead a claim under the TUTSA, the court does not reach whether that statute preempts the receiver's tort claims. *See* Doc. 45 at 24.

**E. Breach of implied contract and unjust enrichment**

The receiver also brought claims for breach of implied contract and unjust enrichment. Doc. 39 at 35, 39–40. Defendants urge that the implied-contract claim fails under the rule that "[i]f a valid express contract covering the subject matter exists there can be no recovery upon a contract implied by law." Doc. 45 at 31 (quoting *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)). Defendants also argue

that the existence of express and implied contracts bars recovery for unjust enrichment. *Id.* at 29–30. In response, the receiver contends that the conduct underlying both claims is not the subject of an express contract. Doc. 46 at 28–30.

Defendants' argument conflates an implied-in-fact contract with a contract implied by law. A contract implied in fact arises from a mutual intention to contract implied by the parties' conduct. *See Hou. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex. App. 2013) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). In contrast, a contract implied by law is recognized by Texas courts as "not [a] contract at all" because "[n]o agreement is required, so the parties need not have a meeting of the minds." *Id.* (cleaned up) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). "Instead, the law imposes obligations to do justice even though it is clear that no promise was ever made or intended." *Id.* (cleaned up).

Here, the alleged implied contract bears the hallmarks of a contract implied in fact because it was grounded in an alleged mutual agreement. The receiver alleges that "Reliable One agreed to and did provide millions of dollars in direct funding, equipment, lab facilities, materials, and operational support" to Matregenix. Doc. 39 at 40. "In exchange," she further pleads, "Matregenix agreed to use these resources solely for the research and development of technologies for the benefit of Reliable One and to develop commercially viable products, including, but not limited to, NIOSH-certified face mask membranes." *Id.* The implied contract was also allegedly grounded in a "mutual understanding that the resources provided by Reliable One would not be misused to benefit Matregenix alone or third parties, and that any technology developed with Reliable One's resources would be for Reliable One's benefit only." *Id.*

Accordingly, the bar against recovery under an equitable theory—such as a contract implied in law—does not apply to the receiver's contractual claim even if there is an overlap in the

contracts' subject matter. *Cf. Fortune*, 52 S.W.3d at 684 ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."). Because defendants make no other arguments regarding the breach-of-implied-contract claim, defendants have not established that the receiver fails to state a claim for breach of implied contract. That said, because the same conduct underlies both the contractual and unjust-enrichment claims (*see* Doc. 39 at 35–36, 39–40; Doc. 46 at 28–30), the receiver is barred from recovery under a theory of unjust enrichment. *Id.*; *see also Mintzer*, 417 S.W.3d at 699 ("[A] court properly resorts to quasi-contract only in the absence of an express contract or contract implied-in-fact." (citation omitted)). Her unjust-enrichment claim is dismissed.

**F. Fraud**

The receiver also brought a fraud claim on the theory that defendants' misrepresentations induced Reliable One to give defendants money and resources beyond its contractual obligations. Doc. 39 at 27–28; Doc. 46 at 25–28. Defendants challenge the sufficiency of the fraud claim on two grounds. The court addresses each in turn.

**1. Federal Rule of Civil Procedure 9(b)**

First, defendants contend that the receiver failed to plead with particularity two elements of common-law fraud. "The elements of common law fraud are (1) a material misrepresentation that (2) was false, (3) was either known to be false when made or was asserted without knowledge of its truth, (4) was intended to be acted upon, (5) was relied upon, and (6) caused injury." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017) (quoting *Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)) (internal quotation marks omitted). Federal Rule of Civil Procedure 9(b) imposes a "heightened pleading standard" for fraud claims. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Under Rule 9, a plaintiff pleading fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That requires

"specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin*, 407 F.3d at 696.

Defendants assert that the receiver failed to allege a single false statement. Doc. 45 at 28. The receiver counters that she has sufficiently pleaded the "who, what, when, and where" of her fraud claim and points to three examples of false statements alleged in her complaint. Doc. 46 at 25. Those examples include statements that Matregenix would be Reliable One's "exclusive OEM manufacturer," give Reliable One exclusive access to custom machinery, and bring Reliable One's products to market. *Id.* (citing Doc. 39 at 15, 17, 22). The receiver also points to her allegations about defendants' misrepresentations beginning in February 2021 about the testing, certification, and regulatory approval of Reliable One's face masks. *Id.* at 26 (citing Doc. 39 at 21–23). Defendants did not respond to this argument in their reply brief. Doc. 47 at 8–9. Having reviewed the receiver's complaint, the court agrees with the receiver that she alleged with particularity specific false statements to support her fraud claim. *See, e.g.*, Doc. 39 at 21–23.

Defendants also argue that the receiver failed to plead with particularity that defendants made any false statements knowingly or recklessly. Doc. 45 at 28. The receiver responds that she adequately pleaded the necessary scienter and again cites to several paragraphs of the complaint. Doc. 46 at 26–27 (citing Doc. 39 at 11–13). The portion of the complaint she cites, however, relates to defendants' knowledge that the information they were providing to Reliable One would be shared with investors. *See* Doc. 39 at 11–13. It does not concern defendants' knowledge that such information was false, much less defendants' knowledge or reckless disregard of the truth when allegedly making false statements to Reliable One on other occasions.

That said, the receiver's other allegations demonstrate that the receiver pleaded the required scienter. *See* Doc. 39 at 22–23

(alleging several specific misrepresentations). Moreover, when fraud allegedly occurred over an extended period of time and consisted of multiple acts, a plaintiff may plead specific representative examples of the allegedly fraudulent acts. *See United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 821 (E.D. Tex. 2008) (collecting cases). A plaintiff may do so if the claim has a sufficient factual basis and is grounded in more than speculation and conclusory allegations. *Id.* at 822 (citing *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)). Here, the receiver's complaint alleges fraudulent acts across approximately two years and provides specific examples. *See generally* Doc. 39. Accordingly, the receiver's allegations of specific statements meet Rule 9's particularity requirement.

**2. Fraudulent inducement**

Second, pointing to numerous allegations that defendants' misrepresentations induced Reliable One to enter various agreements, defendants challenge the receiver's fraud claim as a repackaged but inadequately pleaded fraudulent-inducement claim. Doc. 45 at 29; Doc. 47 at 8–9. Specifically, defendants argue that the receiver's claim fails to allege a required element of fraudulent inducement—that defendants entered these agreements while intending to breach them. Doc. 45 at 29; Doc. 47 at 9.

"Fraudulent inducement is a particular species of fraud that . . . requires the existence of a contract" that "was procured by fraud, without which [the contract] would not have been executed." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277–78 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001), and *ISG State Ops., Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 716–18 (Tex. App. 2007)). The elements of fraud and fraudulent inducement are nearly identical, except that "[f]raudulent inducement also requires proof of an underlying contract which was induced." *See Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citations omitted). Put another way, the fraud must concern, for instance, a party's

intent to perform. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 913 (W.D. Tex. 2015) (citing *Oliver v. Rogers*, 976 S.W.2d 792, 804 (Tex. App. 1998)).

The receiver asserts that she does not plead fraudulent inducement but then concedes that the alleged fraud involved inducement to enter various agreements. Doc. 46 at 27–28. She grounds her claim for breach of implied contract in Reliable One providing "millions of dollars in direct funding, equipment, lab facilities, materials, and operational support." Doc. 39 at 40. That same conduct is the basis of the reliance element of her fraud claim. *See id.* at 28 (observing that Reliable One "invest[ed] millions of dollars in direct payments to Matregenix, suppl[ied] millions of dollars in lab equipment, cover[ed] operational expenses, and for[went] other opportunities."). Citing numerous agreements Reliable One entered, the receiver further concedes that defendants "made fraudulent misrepresentations to *induce* continued engagement by Reliable One and the continued provision of money and resources by Reliable One." Doc. 46 at 28 (emphasis added). Those misrepresentations, the complaint alleges, concerned promises to perform various acts for Reliable One and false statements about defendants' performance under ensuing agreements. Doc. 39 at 9–10, 21–23, 27. Moreover, the complaint expressly alleges that Matregenix "never intended to honor its representations." *Id.* at 28.

Thus, even if the receiver's fraud claim is construed as a fraudulent-inducement claim, the complaint sufficiently alleges such a claim. Defendants' argument that the complaint fails to allege facts showing defendants' intent to breach ignores that intent can be inferred from subsequent acts or circumstances. It is true that a "party's failure to perform a contract, standing alone, is no evidence of that party's intent not to perform at the time the contract was made." *Century Marine, Inc. v. Vaglica*, 27 S.W.3d 703, 709 (Tex. App. 2000). But "intent 'may be inferred from the party's subsequent acts after the representation is made.'" *Id.* (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.

1986)). That is because "intent to defraud is not susceptible to direct proof," and "invariably must be proven by circumstantial evidence." *Id.* (citation omitted). The complaint repeatedly alleges that defendants made numerous statements that defendants' subsequent actions or later-revealed facts proved were false or misleading. Accordingly, intent to breach can be inferred from the complaint's factual allegations regarding defendants' subsequent acts.

**G. Fraud by nondisclosure and negligent misrepresentation**

The court turns next to the receiver's claims for fraud by nondisclosure and negligent misrepresentation. Doc. 39 at 7. Defendants argue that these claims are barred by the economic-loss rule. Doc. 45 at 25. Defendants also challenge each as failing to state a claim. *Id.* at 29–30. Those challenges fail.

First, the economic-loss rule does not bar either claim. "Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020) (citing *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 235 (Tex. 2014), and *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011)). "[T]he rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007)).

Ordinarily, "[w]hen the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991). On the flip side, "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445

S.W.3d 716, 718 (Tex. 2014). "But the rule is not generally applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles." *LAN/STV*, 435 S.W.3d at 235–36. In fact, Texas courts have recognized that pure economic loss is often recoverable in torts such as negligent misrepresentation, breach of fiduciary duty, and fraud. *See Sharyland Water*, 354 S.W.3d at 418–19. After all, certain legal relationships may give rise to affirmative duties distinct from contractual obligations. *Nat'l Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 326 (5th Cir. 1994) (citing *DeLanney*, 809 S.W.2d 493). Thus, under Texas law, courts must "look to the origin of the duty owed and the nature of the resulting injury" to determine whether a claim sounds in tort or contract. *Id.*

Defendants urge that the receiver's claim for fraud by nondisclosure is barred by the economic-loss rule because it alleges the same injury as the receiver's breach-of-implied-contract claim. Doc. 45 at 26. The receiver's fraud-by-nondisclosure claim is grounded in Reliable One's investment of "millions of dollars in funding, equipment, and operational support" in Matregenix. Doc. 39 at 30. So is her breach-of-implied-contract claim. *Id.* at 40. The damages the receiver seeks "for the additional resources diverted" (Doc. 46 at 22) are therefore coextensive with the damages the receiver seeks for her contract claim.

That said, the receiver alleges that defendants had a duty "arising from the fiduciary, special, or confidential relationship between the parties, as well as the trust and confidence Reliable One placed in [defendant] Matregenix throughout their business relationship." Doc. 39 at 28. Defendants counter that the duty is contractual because the receiver pleaded that Reliable One's relationship with defendants "was governed by a series of express and implied contracts." Doc. 47 at 8 (citing Doc. 39 at 15). Even so, "[t]he duty not to commit fraud is 'an independent legal duty' that is 'separate from the existence of the contract itself.'" *Vikas WSP, Ltd. v. Economy Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

*Contractors*, 960 S.W.2d 41, 47 (Tex. 1998)). Defendants do not argue otherwise. Thus, because the duty breached is independent from any contractual obligation, the economic-loss rule does not bar the receiver's claim for fraud by nondisclosure.

Defendants similarly argue that the receiver's negligent-misrepresentation claim is barred because it seeks the same contractual remedies as the claim for breach of implied contract. Doc. 45 at 26. It does. *Compare* Doc. 39 at 38 with *id.* at 40. The Texas Supreme Court has noted, however, that pure economic loss can be recovered for negligent misrepresentation. *See Sharyland Water*, 354 S.W.3d at 418 & n.14. And again, the receiver alleges that Matregenix's duty to disclose arose from its "superior knowledge through its exclusive control over its lab operations and technical data and a special relationship with Reliable One." Doc. 39 at 38. Defendants do not explain how the duty is contractual. Accordingly, defendants have not shown that the economic-loss rule bars the receiver's negligent-misrepresentation claim.

Second, the receiver has not failed to state a claim for either fraud by nondisclosure or negligent misrepresentation. Defendants urge that both claims fail for the same reasons as the receiver's fraud claim. Doc. 45 at 29–30. But as explained above, the receiver has sufficiently pleaded a fraud claim. Defendants' argument is thus without merit.

**H. Conversion**

Defendants also invoke the economic-loss rule as barring the receiver's conversion claim because that claim "is grounded in the parties' contractual relationship regarding the machinery." Doc. 45 at 27. The receiver asserts that the claim is grounded in defendants' "duty not to use Reliable One's property for others." Doc. 46 at 24. That duty is the basis for the alleged implied contract, however. Accordingly, the duty which defendants allegedly breached is contractual in nature. The parties make no arguments about the injury; however, considering that the duty is contractual, so must be the remedy. *See Sw. Bell*, 809 S.W.2d at 494 ("[I]f the defendant's conduct . . . would give rise to liability only

because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."). The economic loss rule therefore bars the receiver's conversion claim.

Even if the economic-loss rule did not apply, however, the receiver's conversion claim still must be dismissed for failure to state a claim. "To prevail on a claim for conversion of personal property, a plaintiff must prove that . . . the plaintiff demanded return of the property[] and . . . the defendant refused to return the property." *SBI Invs., LLC v. Quantum Materials Corp.*, No. 3:17-cv-00863, 2018 WL 1191854, at *5 (Tex. App. Mar. 8, 2018) (citation omitted). But "a plaintiff in a conversion case need not show the elements of demand or refusal (1) where the defendant's possession was acquired wrongfully, (2) after the conversion has become complete, or (3) where it is shown that a demand would have been useless." *RR Stanley v. Collins*, No. 13:18-cv-00040, 2019 WL 5800430, at *8 (Tex. App. Nov. 7, 2019).

The receiver alleges that demanding the return of the property "would have been useless as Matregenix had already used the proprietary property for its separate commercialization efforts with third parties, and Matregenix's acts are a clear repudiation of Reliable One's rights." Doc. 39 at 39. Put another way, the receiver alleges that because defendants exercised control over Reliable One's property in a manner inconsistent with Reliable One's rights, the exception to the demand-and-refusal requirement kicks in. But an element of conversion is that a defendant "unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner." *SBI Invs.*, 2018 WL 1191854, at *5 (citation omitted). If using property inconsistent with an owner's rights were all that is necessary to show that a demand for the return of property would be useless, the exception would swallow the rule. The receiver's allegation that defendants repudiated Reliable One's rights is therefore insufficient to show that a demand for the return of property was useless. Because she has

not alleged a demand for the return of the property at issue, the receiver fails to state a claim for conversion.

### I. Breach of fiduciary duty

Lastly, defendants challenge the receiver's breach-of-fiduciary-duty claim as barred by the economic-loss rule because any allegedly breached duty arose from Soliman's employment contract with Reliable One. Doc. 45 at 27. Defendants also argue, however, that the fiduciary-duty claim should be dismissed for three other reasons. First, defendants argue that Soliman was not an officer of Reliable One. Doc. 45 at 32–33. Second, the relationship between defendants and Reliable One was purportedly an arm's-length business relationship that did not give rise to a fiduciary duty. *Id.* And third, even if Soliman was an officer of Reliable One, the receiver failed to allege sufficient facts to pierce the corporate veil. *Id.* at 36–38. Accordingly, defendants urge dismissal not only of the receiver's fiduciary-duty claim but also of all claims against Soliman. *Id.*[3]

#### 1. Whether Soliman was an officer of Reliable One

The court begins with defendants' argument that Soliman was not an officer of Reliable One. Pointing to Reliable One's public SEC filings, defendants urge that Soliman was not an officer because Reliable One never reported him as such. Doc. 45 at 37. The receiver agrees that the court may take judicial notice of public documents but contends that she sufficiently pleaded that Soliman was an officer. Doc. 46 at 34–35. Moreover, she argues that the SEC's complaint alleges that Reliable One's SEC filings were fraudulent and notes that the form which defendants cite is from 2017, two years before Reliable One began its alleged relationship with defendants. *Id.* at 35.

---

[3] Defendants also urge that the fiduciary-duty claim fails because it is insufficiently pleaded under Rule 9(b) but do not explain why. Doc. 45 at 32–33. Considering that the court already rejected defendants' argument that the receiver failed to sufficiently plead claims for fraud and fraud by nondisclosure, *see supra* III.F–G, defendants' cursory argument is unpersuasive.

When resolving a motion to dismiss, the court may take judicial notice of public records. *Tellabs*, 551 U.S. at 322; *Walker*, 938 F.3d at 735. The court may also consider documents attached to a motion to dismiss that are referenced in the complaint and "central to the plaintiff's claims." *Walker*, 938 F.3d at 735. Accordingly, the court takes judicial notice of Reliable One's 2017 Form D. *See* Reliable One, Inc., Notice of Exempt Offering of Securities (SEC Form D) (Mar. 2, 2017). The court previously took judicial notice of filings in the *Reliable One* litigation, which include the SEC's complaint. *See supra* III.A n.2; *see also Reliable One*, No. 6:23-cv-00006, Doc. 2.

Defendants' argument is unavailing. It depends on a public document that predates the alleged relationship between Reliable One and defendants. Moreover, considering the SEC's allegations in *Reliable One*, Reliable One's public SEC filing provides a questionable basis for establishing facts contrary to the receiver's allegations. At the motion to dismiss stage, the court accepts well-pleaded allegations as true and construes those allegations in the light most favorable to the plaintiff. *Plotkin*, 407 F.3d at 696. Reliable One's public SEC filings do not show that the court should do otherwise with the receiver's allegations. The court therefore accepts as true, for purposes of the motion to dismiss, the receiver's allegations that Soliman was an officer of Reliable One.

Defendants also urge the court to take judicial notice of Reliable One's filings with the South Dakota Secretary of State, which omit mention of Soliman. Doc. 62 at 2. Defendants raise this argument for the first time in their supplemental brief. *See generally* Doc. 45; Doc. 47. Even if the request is not waived, taking judicial notice of those documents would not alter the court's analysis. When considering a motion to dismiss, the court may "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Experience and common sense inform the court that, if Reliable One's public filings with the SEC are not trustworthy sources of information about its officers, *see Reliable One*, No. 6:23-cv-00006, Doc. 2 at 9, then neither are its public filings with other

agencies or authorities. That is especially true considering that Reliable One's state filing omits the same officer as its SEC filing. *Compare* Doc. 62-1 *with Reliable One*, No. 6:23-cv-00006, Doc. 1 at 9.

**2. Soliman's alleged fiduciary duties**

The court next turns to whether Soliman's role as an officer created any fiduciary duties independent of a contract or Reliable One's business relationship with defendants, as the receiver alleges. *See* Doc. 39 at 41. "Federal courts must apply the choice of law rules of the forum state." *Cole v. GM Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (citation omitted). Here, the forum state is Texas. Texas law provides that the law of the state of incorporation governs a corporation's internal affairs, which include the duties of its officers. Tex. Bus. Orgs. Code §§ 1.102, 1.105. The parties agree that Reliable One is a South Dakota corporation and that South Dakota law applies. *See* Doc. 61 at 2; Doc. 62 at 2.

Under South Dakota law, "[a]n officer or director of a corporation has a fiduciary duty to act in a manner that he reasonably believes is in its best interests." *Lindskov v. Lindskov*, 800 N.W.2d 715, 719 (S.D. 2011) (citing S.D. Codified Laws § 47-1A-803, -842). "He is bound to exercise the utmost good faith and fair dealing with the company. When dealing with the company, an officer or director must make full and frank disclosure of the circumstances of a business transaction." *Id.* (cleaned up). An officer's fiduciary duties "may include a duty to disclose." *Id.*

Thus, the duties that Soliman purportedly had as an alleged officer of Reliable One arose apart from any employment contract. *See* Doc. 39 at 41. The receiver alleges that he breached those noncontractual fiduciary duties. *See id.* And defendants do not argue that those duties were the subject of any other contract. Accordingly, the economic-loss rule does not bar the receiver's fiduciary-duty claim.[4]

[4] The court need not resolve whether South Dakota's or Texas's articulation of the economic-loss rule applies because the result is the same. *See Bailey*

Defendants counter that the relationship between Reliable One and defendants was purely an arm's-length business relationship. Doc. 45 at 32. That argument, though, is grounded in defendants' assertion that Soliman was not an officer of Reliable One. *See id.* at 33. The court already rejected that contention for purposes of the motion to dismiss. And the court found that the receiver sufficiently pleaded that Soliman had fiduciary duties arising from his alleged role as an officer of Reliable One. It is therefore unnecessary to resolve whether the business relationship between Reliable One and defendants gave rise to fiduciary duties.

**3. Corporate-veil piercing**

As a final matter, defendants argue that all claims against Soliman must be dismissed because the receiver failed to plead facts necessary to pierce the corporate veil. Doc. 45 at 36–37. That argument is again premised in part on the argument that Soliman was not an officer of Reliable One. *Id.* at 37. The court already rejected that argument and so proceeds accepting as true the complaint's allegations that he was an officer. "Under Texas's choice-of-law rules, whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized." *Sterett Equip. Co. v. PH Steel, Inc.*, No. 1:22-cv-00476, 2024 WL 1179788, at *12 (E.D. Tex. 2024) (citation omitted); Tex. Bus. Orgs. Code § 1.104. Matregenix is a Delaware corporation. Doc. 61 at 2; Doc. 62 at 3. Delaware veil-piercing law therefore applies.

A corporate officer is personally liable for violating a duty of care that he personally owes, even if a corporation that he serves

---

*v. Shell W. E&P, Inc.*, 609 F.3d 710, 722–23 (5th Cir. 2010); *see also, e.g.*, *Sharyland Water*, 354 S.W.3d at 418 (noting that Texas courts have allowed recovery of pure economic loss for breach of fiduciary duty); *In re Elizabeth A Briggs Revocable Living Tr.*, 898 N.W.2d 465, 471 (S.D. 2017) ("A claim for breach of fiduciary duty sounds in tort . . . ."); *Kreisers Inc. v. First Dakota Title Ltd. P'ship*, 852 N.W.2d 413, 422 (S.D. 2014) (explaining that the economic-loss rule prevents parties from circumventing contractual allocations of losses and declining to extend the doctrine to professional services because the rule "is usually more appropriate when there is no fiduciary relationship").

also violates the same duty of care through the officer's actions. *See Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015) (cleaned up). Here, the receiver alleges that Soliman "created Matregenix as a vehicle to perpetrate fraud on Reliable One and its investors." Doc. 39 at 2. The receiver further alleges specific actions Soliman took to commit various torts against Reliable One. *See generally id.* As does Matregenix, Soliman has duty not to defraud other people. So the receiver may bring tort claims against Soliman personally.

The receiver may not maintain her contractual claim against Soliman, however. "When an employee or officer of a company does not bind himself or herself to a corporate contract individually, . . . a plaintiff who seeks to sue an officer of a corporation must pierce the corporate veil to do so." *Del. Hum. & Civ. Rights Comm'n v. Schell Bros., LLC*, No. S23C-04-004, 2025 WL 1253611, at *9 (Del. Sup. Ct. Apr. 28, 2025). Because Delaware disfavors piercing the corporate veil, courts consider a number of factors including (1) undercapitalization, (2) corporate solvency, (3) observation of corporate formalities, (4) whether the dominant shareholder siphoned corporate funds, and (5) "whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (citation omitted). No one factor is dispositive; typically, a decision to pierce the corporate veil "is largely based on some combination of these factors, in addition to 'an overall element of injustice or unfairness.'" *Id.* (citation omitted). The corporate veil can also be pierced "based on an agency or 'alter ego' theory," which requires that "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (citation omitted).

The receiver's primary argument for piercing the corporate veil rests on Soliman's alleged misuse of the corporate form to harm Reliable One. *See* Doc. 61 at 2–3. But the receiver concedes that Soliman and the corporate form were not indistinguishable.

*See, e.g.*, Doc. 39 at 32 (alleging that Matregenix's employees participated in communicating various misrepresentations to investors). The receiver also concedes that Matregenix was doing business with third parties. *See, e.g.*, Doc. 39 at 6, 29. That cuts against a finding that the receiver adequately pleaded that Matregenix "exist[ed] for no other purpose than as a vehicle for fraud." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d at 534. The receiver does not argue that any other factors weigh in favor of piercing the corporate veil. Considering the foregoing, the receiver has not alleged sufficient facts to pierce the corporate veil and hold Soliman liable for any breach of implied contract by Matregenix. Soliman is thus dismissed as a party as to that claim.

**IV. Conclusion**

Defendants' motion to dismiss (Doc. 45) is granted in part and denied in part. The receiver's claims for securities fraud, misappropriation of trade secrets, unjust enrichment, and conversion are dismissed with prejudice. The receiver's claim for breach of implied contract against defendant Soliman is also dismissed with prejudice. In all other respects, the motion to dismiss is denied. The surviving claims are thus for fraud, fraud by nondisclosure, negligent misrepresentation, breach of fiduciary duty, and (as against Matregenix only) breach of implied contract.

Given the resources already spent conferring on the scope of the original complaint and crafting the amended complaint, there shall be no further amended complaints without leave of court. Defendants are ordered to serve any responsive pleading to the surviving claims of the amended complaint within 14 days. *See* Fed. R. Civ. P. 12(a)(4)(A).

*So ordered by the court on August 12, 2026.*

J. CAMPBELL BARKER
United States District Judge